MONCURE) P.
delivered the opinion of the court.
This is a writ of error to a judgment of the Hustings court of the city of Richmond, sentencing the plaintiff in error to confinement in the penitentiary for the term of three years for grand larceny, of which he had been found guilty by the verdict of a jury. The case is as follows:
On the 2d day of February 1874 the said plaintiff was indicted in the said court for grand larceny. On the fourth day of the same month he was found guilty of the said offence by the verdict of a jury, by which the term of his confinement in the penitentiary was ascertained to be three years. On the 10th day of the same month it being demanded of him if anything for himself he had or knew to say why the court should not now proceed to pronounce judgment against him according to law, he tendered to the court a special plea of pardon for the said offence, and produced in court, as a part of said plea, an instrument of writing, under the hand of the governor and the lesser seal of the commonwealth, purporting to be such a pardon. To the said plea the attorney for the commonwealth demurred, and the plaintiff in error joined in the demurrer. On the next day, to wit: the 11th day of February 1874, the court sustained the demurrer and *rejected the said plea. The said plaintiff thereupon moved the court in arrest of judgment upon the verdict aforesaid, which motion the court overruled; and nothing further being offered or alleged in delay thereof, judgment was thereupon pronounced according to the verdict. To that judgment this writ of error was awarded.
The only question involved in this case is, ‘ ‘whether the governor had any authority to pardon the plaintiff in error for the said offence before judgment was rendered against him therefor?”
The governor’s power to grant a pardon is conferred by the constitution, article iv, sec. 5, which declares that “he shall have power to remit fines and penalties in such cases, and under such rules and regulations as may be prescribed by law; and, except when the prosecution has been carried on by the house of delegates, to grant reprieves and pardons after conviction; to remove political disabilities consequent upon conviction for offenses committed prior or subsequent to the adoption of this constitution, and to commute capital punishment; but he shall communicate to the general assembly at each session the particulars of every case of fine or penalty remitted, of reprieve or pardon granted, and of punishment commuted, with his reasons for remitting, granting, or commuting the same.”
Can the governor under this constitutional provision pardon a person for an offence after he has been found guilty thereof by the verdict of a jury, but before sentence is pronounced on such verdict? or, which is the same thing, do the words “after conviction” in the said provision refer to the verdict of the jury, or to the sentence in such a case? This is the question we now have to solve.
*What is the meaning of the word “convicted,” in this connection? Blackstone says: If the jury “find the prisoner guilty, he is then said to be convicted of the crime whereof he stands indicted; which conviction may accrue two ways— either by his confessing the offence and pleading guilty, or bj* his being found so by the verdict of his country.” 4 Bl. Com. 362. And again he says: “The plea of autrefois convict, or a former conviction for the same identical crime, though no judgment was ever given, or perhaps will be (being suspended by the benefit of clergy or other causes), is a good plea in bar to an indictment.” Id. 336. Jacob says: “There is great difference between a man convicted and attainted, though they are frequently, though inaccurately, confounded together:” and he then proceeds to. explain the difference and its consequences. 1 Jacobs’ Haw Dictionary, p. 163, title “Attainder.” And again he says: “Convict, convictus. He that is found guilty of an offence by verdict of a jury. Crompton saith, that conviction is either when a man is outlawed, or appeareth and confesseth, or is found guilty by the inquest; and when a statute excludes from clergy persons found guilty of felony, &c., it extends to those who are convicted by confession. Cromp. Just. 9.” “Judgment amounts to conviction, though it doth not follow that every one who is convict is adjudged. ’ ’ 2 Id. p. 63, title “Convict and Conviction. ’ ’ Bouvier says: Conviction means “a condemnation. In its most extensive sense, this word signifies the giving judgment against a defendant, whether criminal or civil. In a more limited sense, it means the judgment given against a criminal. And in its most restricted sense, it is a record of the summary proceeding upon any penal statute, before one or more justices of the peace, or other person duly authorized, *in a case where the offender has been convicted and sentenced; this last has usually been termed a summary conviction. ” 1 Bpuv. Daw Dictionary, p. 346, title “Conviction.” Bishop says: “This word conviction ordinarily signifies the finding of the jury, by verdict, that the prisoner is guilty. When it is said there has been a conviction, or one is convict, the meaning usually is, not that sentence has been pronounced, but only that the verdict has been returned. Yet the word sometimes denotes the final judgment of the court. It has likewise some other significations, according to one of which, a conviction is defined to be a record of the summary proceedings upon any penal statute, before one or more justices of the peace, or other persons duly authorized, in a case where the offender has been convicted and sentenced.” 1 Bishop on Crim. Haw, $ 361. *582 And again lie says: “There can be no par'don of an offence until committed; for earlier immunity granted, would be a license procurable only from the legislature. But when the guilt is incurred, it can be remitted either before judicial proceedings are undertaken, or during their pendency, or after their termination, or after the pun'ishment has been partly or fully endured. This is the general doctrine; but the constitution of most of our states forbid the pardoning power to act before conviction. We have already seen that a defendant is convicted when the verdict of guilty is returned by the jury, though the sentence is not pronounced, and accordingly, in Massachusetts, where' this constitutional restraint prevails, the court, in one case, postponed the sentence after the verdict of guilty had been brought in, expressly to permit the defendant to apply for a pardon; which being obtained, was pleaded in bar of the sentence. ” Id. §751. The case here referred to is Commonwealth v. Mash, 7 Metc. R. 472.
*A11, or nearly all, of the authorities before referred to and others, were cited by the counsel for the plaintiff in error and the attorney general, in support of the view, in which they both concurred, that a verdict of guilty, without any sentence upon it, amounts to a conviction, within the meaning of the constitutional provision aforesaid. And the former also referred to many portions of out statute law, and some cases decided by our highest 'criminal court in support of the same view. As for example, Code of 1873, ch. 202, § 18: ‘If, after conviction, and before sentence of any person, the court see reasonable ground to doubt his sanity, it may impanel a jury,” &c. § 20: “When a prisoner is so brought from the asylum,” &c., “if convicted he shall be sentenced, ’ ’ &c. § 27: “If a person indicted of felony, be by the jury acquitted of part and convicted of part of the offence charged, he shall be sentenced for such part,” &c. Id. ch. 195, § 23: “The term of confinement in the penitentiary or in jail of a person convicted of felony where that punishment is prescribed shall be ascertained by the jury.” §25: “When any person is convicted of an offence and sentenced to confinement therefor in the penitentiary,” &c. § 27: “When a person is convicted of petit larceny, and it is alleged in the indictment on whiett he is convicted, and admitted, or by the jury found, that he has been before sentenced, &c., for the like offence, he shall be sentenced to be confined in the penitentiary for one year.” Also §§28 and 29; and 2 Va. Ca., p. 235, Bennet’s case; and 316, Campbell’s case.
The case of the Commonwealth v. Williamson, 2 Va. Cases 211, strongly tends to support the same view. The question there was whether', under our statute on the subject, an accessory might be tried after the principal had been found guilty by a jury, but before any ^judgment had been entered on the verdict. The words of the statute were, “If any principal offender shall be convicted of any felony, or shall stand mute on his arraignment, or persist, after being admonished by the court, in not answering directly to the indictment, or shall be outlawed, it shall and may be lawful to proceed against any accessory, either before or after the fact, in the same manner as if such principal felon had been attainted thereof, notwithstanding such principal felon shall be admitted to the benefit of his clergy, pardoned, or otherwise delivered .before attainder, ’ ’ &c. Mr. Leigh, in argument for the prisoner, contended, that at common law the accessory could not be tried before the attainder of the principal. “The ground, ” he said, “on .which this doctrine is founded, seems to be, that the verdict only ascertains the fact, but the guilt is not conclusively proved until the court gives judgment. The charge itself against the principal may not be legal; the verdict may not be conformable to law and the evidence, and a new trial may be awarded: these things are not certainly fixed till the sentence is passed. ’ ’ But a majority of the court held, that the prisoner (the accessory) might be legally tried, and a verdict found against him, before the principal had received judgment, or been adjudged by the court guilty on the verdict.
The learned counsel, in his argument in this case, also referred, and with much effect, to the form observed when sentence is pronounced, as laid down in 3 Rob. Pr. old ed. p. 281; which, he contended, strongly serves to confirm his view, as to the sense in which the word “conviction” is generally used, in our laws and legal proceedings. “The day before sentence is to be pronounced, notice is usually given to the jailer to have the convicts in court on -the next *day, as soon as the orders are read. When the prisoners are set to the bar, the clerk holds together in his hands the indictments against all the convicts, and proceeds thus: ‘A B, &c., stand up. You have been severally indicted and tried, and now stand convicted, you, A B, of murder in the first degree, &c. Have you anything to say for yourselves why the court should not now proceed to pronounce judgment against you according to law? What say you, A, B, &c.?” If nothing be alleged in delay of judgment, the . clerk hands the indictments to the judge, who passes sentence on the prisoners.”
These authorities seem fully to verify what is stated in 1 Bishop on Crim. Law, § 361, as before mentioned; that the word conviction ordinarily signifies the finding of the jury, by verdict, that the prisoner is guilty; and that when it is said there has been a conviction, or one is convict, the meaning usually is, not that sentence has been pronounced, but only that the verdict has been returned. A verdict, however, is not always necessary to a convic.tion, which may be by a judgment upon a demurrer, or upon a confession of guilt, or upon a proceeding in outlawry, as well as by a verdict of a jury on the plea of not guilty. The *583 word “conviction,” in its ordinary sense, may therefore be said to mean the ascertainment of the fact of guilt in a criminal prosecution, in the mode prescribed by law, which mode, most generally, is a verdict of a jury on the plea of not guilty. The Code, ch. 195, | 17, provides that ! ‘lío person shall be convicted of felony unless by outlawry, or by his confession of guilt in court, or by his plea or demurrer, or by the verdict of a jury, accepted and recorded by the court,” which plainly implies that a person may be convicted in either of those modes.
*But the further statement contained in 1 Bishop, | 361, as before mentioned, that the word conviction sometimes denotes the final judgment of the court is equally true. As an example of the use of the word in that sense, the Code, ch. 195, $ 19, may be referred to, which declares, that “except where it is otherwise expressly provided, a person convicted of felony shall not be a witness, unless he has been pardoned or punished therefor, and a person convicted of perjury shall not be a witness, although pardoned or punished.” The word “convicted” in this section means “adjudged guilty. ’ ’ ‘ ‘JSTo person is deemed infamous inlaw,” says Greenleaf, “until he has been legally found guilty of an infamous crime. But the mere verdict of the jury is not sufficient for this purpose, for it may be set aside, or the judgment may be arrested, on motion for that purpose. It is the judgment, and that only, which is received as the legal and conclusive evidence of the party’s guilt for the purpose of rendering him incompetent to testify.” See 1 Green-leaf on Evidence, $ 375, and the cases cited in note 1; also Keithler v. The State of Mississippi, 10 Smeedes & Marsh. 192. The whole of title 56 in the Code, consisting of chapters 206, 207 and 208, concerning the penitentiary, may be referred to as affording many instances in which the word ■“convict” is used to signify a person adjudged guilty of felony by the final judgment of the court; the word convict being so used as a convenient designation of such a person. There are no doubt other like examples to be found in the Code, but it is needless to refer to any more.
It thus appears that the word “conviction,” as used in our laws, ordinarily signifies the finding of the jury by verdict that the prisoner is guilty, or something equivalent thereto; but the word sometimes denotes *the final judgment. In which of these two senses was this word used in the provision of the constitution before referred to?
My first impression was, that it was used in the latter sense, and that it denoted the final judgment. But further reflection, and an examination of the authorities referred to, have brought my mind to a different conclusion; and I now think, that in this instance, the word was used in the former sense; that is, according to its ordinary signification aforesaid. Why should it,not have been so used? In England, and in many of the states of this Union, the power of pardon is subjected to no restriction, and may be exercised indifferently, before or after conviction. In this and some of the other states it is subject to the restriction of being exercised only after conviction. It was not always subject to such a restriction in this state. It was not so subject under the constitution of 1776; nor under the constitution of 1830. It was for the first time made so in the Code of 1849, ch. 17, ‘i 18, which has continued in the same words ever since; being the same with the Code of 1873, ch. 16, | 18. The same restriction was engrafted on the constitution of 1851, the provision of which on the subject of the granting of pardons being identical, in words, with that of the present constitution; except that there is a material enlargement of the power in the present-constitution; the words, “or the law shall otherwise direct,” in the old constitution having been omitted in the new: thus freeing the executive power from the control of the legislature, to which the old constitution subjected it; and the words, “to remove political disabilities consequent upon conviction for offences committed prior or subsequent to the adoption of this constitution,” which were not in the former, were inserted in the new constitution ; *thus extending the power of executive pardon over a new and important subject. The framers of these constitutions, and especially of the former, in adopting this provision, seem to have copied it in many respects from the like provision in the constitutions of those states in which the power is restricted in the same way; and the presumption is, that they used the word “conviction” in the same sense in which it had not only been always ordinarily used in this country and in England, but in which it appears to have been used in those constitutions of other states from which the provision in ours was substantially copied.
Massachusetts is, one of the states in whose constitution the restriction exists; and that is a state from whose laws our revisors borrowed more largely in the revision of our code than any other. In the case of Commonwealth v. Mash, 7 Metc. R. 472, referred to by the attorney general, decided in 1844, in which Shaw, C. J., delivered the opinion of the whole court, the power of the governor to grant a pardon of an offender after she was found guilty by the verdict of a jury and when no sentence had been pronounced upon the verdict, was recognized and admitted. Indeed no question was raised in regard to it. And the court being satisfied that it was a proper case for pardon, and that the governor, upon being informed of the facts, would grant a pardon, did not pass sentence on the prisoner, but took a recognizance for her appearance in court on a future day, for the purpose of affording her an opportunity to apply for a pardon; and she having accordingly obtained one, pleaded the same in bar of sentence; whereupon the court ordered her to be discharged. South Caro *584 lina is another state in whose constitution there *is a like restriction of the power of pardon. Indeed the provision of their constitution on the subject is very similar to that of ours. In State v. Mary Fuller, 1 McCord R. 178, decided in 1821, the word “conviction” in the provision was construed in the same way, and no question was raised by court or bar as to its meaning'. The opinions of the Supreme courts of those two states, Massachusetts and South Carolina, are entitled to very great respect. We all know the high and well-merited reputation of Chief Justice Shaw. I think those opinions ought to have much weight in the decision of the question now before us. And I have found no case at all in conflict with them.
I can see no reason why the construction adopted by those courts ought not to be adopted also by us. On the contrary, I think that construction is a reasonable one. Why is it required that conviction shall precede pardon? It can only be that before an offence is pardoned it shall be legally ascertained that there is an offence, and who is the offender. Both of these matters are fully ascertained by the verdict of a jury, upon the plea of not guilty to an indictment charging the offence in such circumstantial detail as to place its identity beyond all question. When the verdict is received and recorded, as it must be, nothing remains to be done but to enter up a formal judgment upon it; unless the defendant chooses to move for a new trial, or move ■ in arrest of judgment. It is at his option, therefore, whether he will make one of these motions or let judgment be entered in regular order. Why may he not, at this point, apply for a pardon of the offence of which he has been found guilty by the verdict of a jury? His doing so is an admission that he has no good ground for setting aside the verdict or arresting the judgment; for if he *could obtain relief in that way, the presumption is he would certainly do so. At least, his applying for a pardon indicates a waiver of any right he might have to move for a new trial or in arrest of judgment. Why, then, may he not take that course, and thus save himself, if he can, the humiliation of a sentence, which is not to be executed if a pardon be obtained, and which'would therefore be a mere form?
It must be very rare that a pardon would be granted, or even applied for, before sentence. Often, if not generally, the sentence immediately follows' the conviction. That is almost always the case in our county courts, which sit but a few days. In our city courts, which sit longer, there is sometimes an interval of some days, during which there is time enough for an application for a pardon. Generally, even in such a case, the accused avails himself of every means in his power to obtain his discharge at law, and there is thus, of necessity, a final judgment in the case, either for or against him; after which he may, as a last resort, apply for a pardon. But suppose there are circumstances which make it desirable to him to apply for a pardon after conviction and before sentence, and make it proper, in the estimation of the governor, to grant such a pardon; why may he not accordingly grant it? Is it not reasonable to suppose that the framers of the constitution, while they were enlarging the executive powers of pardon, and freeing it from the control of the legislature, intended to invest the governor with discretion in such a case? May there not be cases in which it would be proper that' such a power should exist and be exercised? Book at the Massachusetts case before referred to. There a woman was convicted of bigamy. She had married a second husband after her first had left her, and been absent in parts unknown *for several j^ears without being heard from by her, and she bona fide believed him to bé dead. She may have had other good reasons for so believing, in addition to his long absence. But he had not been absent for seven years, the time prescribed by law for the presumption of death; and Chief Justice Shaw, while he felt and acknowledged the force of the argument made in behalf of the prisoner, that guilty intent is a necessary ingredient of every crime, and that she could not therefore be guilty, yet thought that the law was imperative, and that her conviction was proper. But he admitted that it was clearly a case for pardon, and suspended the sentence till a pardon could be obtained. Governor Kemper seems to have been of the same opinion in regard to the plaintiff in error in this case, and thinking that he had the constitutional power to grant a pardon after conviction and before sentence, and that this was a proper case for the exercise of such power, accordingly granted a pardon.
I have said nothing in regard to the argument, strongly urged by the counsel for the plaintiff in error, that the presumption in favor of liberty strongly supports the construction for which he contended. There may be much force in that view; but I have found no occasion to rely upon it.
I am therefore of opinion that the Hustings court erred in sustaining the demurrer to the special plea of pardon, and in rejecting the said plea, and that instead of doing so the said demurrer ought to have been overruled, the said plea sustained, and the prisoner discharged. I am therefore for reversing the judgment, and rendering such judgment as the said Hustings court ought to have rendered.
The judgment was as follows:
*The court, for reasons stated in writing and filed with the record, is of opinion that the said Court of Hustings erred in sustaining the demurrer to the special plea of pardon of the said plaintiff in error, and in rejecting the said plea, and in overruling the said plaintiff’s motion in arrest of judgment, and in sentencing him to confinement in the penitentiary for the term of three years, the period by the jurors in their verdict ascertained, and in ordering *585 him to be removed and conveyed to the penitentiary; and that instead of doing' so, the said court ought to have overruled the said demurrer, and sustained the said plea, and dismissed and discharged the said plaintiff of and from the premises in the said indictment and conviction specified, according to the true intent, meaning and effect of the said pardon.
Therefore it is considered by the court, that the said judgment be reversed and annulled : and this court, proceeding to enter such judgment as the said Court of Hustings ought to have entered, it is further considered that the said demurrer be overruled, the said plea of pardon be sustained, and the said plaintiff be dismissed and discharged of and from the premises in the said indictment and conviction specified, according to the true intent, meaning and effect of the said pardon, and go thereof without day, &c. ; which is ordered to be certified to the said Court of Hustings of the city of Richmond.
Judgment reversed.